W. Scott Garcelon *vs.* Commercial Travelers' Eastern Accident Association.

Suffolk.   March 3, 1903. — June 19, 1903.

Present: Knowlton, C. J., Lathrop, Barker, Hammond, & Braley, JJ.

*Fraternal Beneficiary Association. Contract. Pleading, Civil,* Declaration. *Words,* "Loss of an arm."

If the holder of a certificate of a fraternal beneficiary association is entitled to an indemnity of a definite sum of money under the terms of his certificate payable out of a disability assessment levied upon the members of the association, he may recover the amount in an action of contract against the association for a breach of its implied agreement to levy the assessment.

In an action against a fraternal beneficiary association for a failure to levy a disability assessment out of which an indemnity is payable to a member under the terms of his certificate of membership, the cause of action is a breach of contract, and allegations in the declaration as to bad faith, fraudulent purpose and unlawful action on the part of the defendant do not make it a declaration in tort or in contract or tort.

The amputation of an arm about four inches below the elbow is the loss of an arm within the meaning of a certificate of a fraternal beneficiary association agreeing to indemnify the holder for such a disability.

CONTRACT, against a fraternal beneficiary association incorporated under St. 1894, c. 367, to recover $2,500 as indemnity for the loss of an arm from a railroad accident.   Writ dated March 13, 1901.

The amended declaration alleged, that the defendant was organized for the purpose of providing indemnity for its members in case of accident, the membership being limited to commercial travellers, that the plaintiff was a commercial traveller and a member in good standing, that by the certificate of membership the defendant agreed with the plaintiff that if he " shall suffer disability caused by external, violent and accidental means, which shall leave upon the body of said member an external and visible mark, the said association, in accordance with the provisions of its by-laws, within sixty days from the receipt by its board of directors of proof satisfactory to said board of the particular disability suffered by said member, will, from the amount realized from one disability assessment of $2 levied upon each member of said association, pay to said member whose name is above

written, indemnity as follows, that is to say: . . . For the loss of one leg, or one arm, or for an injury which alone, in the judgment of a competent surgeon selected by the board of directors, has caused total disability, rendering said member unable to perform any duties or follow any occupation for a period of not less than two years, and who shall have been, by said board, adjudged to be permanently totally disabled, one half the amount realized from said assessment, not to exceed the sum of $2,500. . . .

" Provided, that any loss above named shall have occurred within three calendar months after the accident which caused it; and provided further, that the word 'loss' as applied to arm or leg is hereby construed and agreed to mean actual amputation."

That on or about October 18, 1900, the plaintiff, while in the exercise of due care, accidentally fell between the cars of a moving train, and the wheels of one of the cars passed over his left arm and crushed and cut it nearly in two, so that it was necessarily and actually amputated forthwith, at a point about four inches below the elbow, and that wholly through these external, violent and accidental means the plaintiff received injuries which resulted in the loss to the plaintiff of his left arm, and caused his permanent and total disability.

That at the time of the accident and disability, and thereafter, there were thirty-five hundred members of the defendant, legally bound to pay and willing and able to pay a disability assessment of $2 each, for the purpose of paying to the plaintiff the money to which he was entitled under the terms of the agreement and certificates, and that if the defendant or its directors had levied a disability assessment of $2 on each member for such purpose it would have received therefrom the sum of $7,000.

And further that at the time of the accident and disability, and thereafter, the defendant had funds on hand to an amount in excess of $2,500, raised by disability assessments theretofore levied, which it could lawfully apply to the payment of the plaintiff's claim for disability.

That the loss of his arm caused the plaintiff total disability, and there was due the plaintiff from the defendant by reason of the accident, loss of arm and total disability one half the amount, not exceeding $2,500, which the defendant would have received from levying the disability assessment of $2 on each member,

and that if the assessment had been levied the defendant would have received $7,000 therefrom.

That the defendant and its board of directors were satisfied by proofs of the plaintiff and otherwise that by reason of the accident and loss of arm he had been caused total disability, rendering him unable to perform any duties or follow any occupation whatsoever at any time thereafter, and had been thereby totally disabled.

That the defendant and its board of directors, acting in bad faith and for the purpose of cheating and defrauding the plaintiff, unlawfully and without right refused and failed to have a competent surgeon pass judgment upon the disability of the plaintiff or to adjudge the plaintiff to be permanently totally disabled, or to levy any disability assessment for the purpose of paying the plaintiff, or for any purpose whatever, or to pay the plaintiff, for or on account of the accident, loss of arm and disability, any money whatsoever.

The defendant demurred, assigning the following causes of demurrer: "First. Because in the amended declaration counts in contract and in tort are improperly joined. Second. Because the amended declaration shows that the plaintiff has not lost his left arm. Third. Because the amended declaration does not set forth any contract between the plaintiff and the defendant whereby the defendant has agreed to pay the plaintiff as indemnity for the loss of an arm any fixed or definite sum of money. Fourth. Because the amended declaration shows that if the defendant is liable to pay the plaintiff any sum as indemnity for the loss of an arm, the defendant is and can only be liable to pay the plaintiff one half of the amount realized from one disability assessment levied by the defendant upon its members, and the amended declaration does not allege that the defendant has levied such an assessment. Fifth. Because the amended declaration does not allege that each of the thirty-five hundred members, who are therein alleged to have been at the time of the alleged injury to the plaintiff legally bound to pay, and able and willing to pay, a disability assessment of $2, for the purpose of paying to the plaintiff money, would in fact have paid such assessment so levied by the defendant. "

In the Superior Court the case was heard by *Bishop,* J. upon

the demurrer to the amended declaration. He made an order sustaining the demurrer from which the plaintiff appealed, and the judge, being of opinion that the matter ought to be determined by this court, reported the case for such determination, ordering a stay of all further proceedings except such as might be necessary to preserve the rights of the parties.

*F. P. Cabot,* for the plaintiff.

*W. F. Merritt,* for the defendant.

BARKER, J. 1. Both before and since the statement in *Burdon* v. *Massachusetts Safety Fund Association,* 147 Mass. 360, that under a policy like that now in suit, "it may be that an action at law would lie; but the more appropriate remedy would be by a proceeding in equity to compel the association to lay the assessment," actions at law have been entertained in our courts upon similar policies. The fact that a plaintiff at law has another remedy in equity to which he might resort is not, commonly at least, a defence to his action at law. We think the policy sued on contains an implied contract on the part of the defendant that under the circumstances alleged it will levy an assessment, and that sufficient facts are alleged in the declaration to show a breach of that contract and that upon the admission as true of the allegations the plaintiff is entitled to judgment for the sum of $2,500.

2. The declaration is in contract, and the allegations as to bad faith, fraudulent purpose and unlawful action on the part of the defendant make it neither a declaration in tort nor a declaration having one count in contract and one in tort.

3. We consider the amputation of an arm a little below the elbow to be the loss of an arm in the common acceptation of those words and within their meaning as used in the policy, which specifies merely the "loss of an arm" without mentioning whether the loss is by amputation below or above the elbow joint.

In our opinion the demurrer should have been overruled, and the case is remanded to the Superior Court with directions to reverse the order sustaining the demurrer and to enter an order overruling it.

*So ordered.*